IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| HANALEI YUKUTARU AIPOALANI, #53121-509,<br><br>            Plaintiff,<br><br>    v.<br><br>ESTELLA DERR, *et al.*,<br><br>            Defendants. | CIVIL NO. 22-00093 DKW-RT<br><br>ORDER DISMISSING COMPLAINT WITH PARTIAL LEAVE TO AMEND |

Before the Court is a Prisoner Civil Rights Complaint, ECF No. 1, filed by pro se Plaintiff Hanalei Yukutaru Aipoalani.[1]  Aipoalani alleges that officials[2] at FDC-Honolulu violated the Eighth Amendment by denying him adequate medical care (Count I), threatening his safety (Count II), and housing him in dangerous environmental conditions (Count III).  *Id.* at PageID # 5–10.  Because the Complaint, as explained below, fails to state a claim, it is DISMISSED, albeit with partial leave to amend.  *See* 28 U.S.C. §§ 1915(e)(2) & 1915A(b)(1).

---

[1] Aipoalani is incarcerated at the Federal Detention Center in Honolulu, Hawaii ("FDC-Honolulu").  *See* ECF No. 1 at PageID # 1; see also Federal Bureau of Prisons, https://www.bop.gov/inmateloc/ (select "Find By Name"; enter "Hanalei" in "First" field and "Aipoalani" in "Last" field; and select "Search") (last visited Apr. 25, 2022).

[2] Aipoalani names as Defendants Warden Estella Derr, Chief Medical Officer Nathan Kwon, M.D., and Unit Manager Kevin Robl in their official and individual capacities.  ECF No. 1 at PageID # 1–2.

# I. **STATUTORY SCREENING**

The Court is required to screen all in forma pauperis prisoner pleadings against government officials pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(a). *See Byrd v. Phx. Police Dep't*, 885 F.3d 639, 641 (9th Cir. 2018).  Claims or complaints that are frivolous, malicious, fail to state a claim for relief, or seek damages from defendants who are immune from suit must be dismissed.  *See Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010).

Screening under 28 U.S.C. §§ 1915(e)(2) and 1915A(a) involves the same standard of review as that used under Federal Rule of Civil Procedure 12(b)(6). *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) (per curiam).  Under this standard, a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).  A claim is "plausible" when the facts alleged support a reasonable inference that the plaintiff is entitled to relief from a specific defendant for specific misconduct.  *See id.*

In conducting this screening, the Court liberally construes pro se litigants' pleadings and resolves all doubts in their favor.  *See Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted).  The Court must grant leave to amend if it appears the plaintiff can correct the defects in the complaint.  *See Lopez*, 203 F.3d

at 1130.  When a claim cannot be saved by amendment, dismissal with prejudice is appropriate.  *See Sylvia Landfield Tr. v. City of Los Angeles*, 729 F.3d 1189, 1196 (9th Cir. 2013).

## II.  **AIPOALANI'S CLAIMS**[3]

Aipoalani alleges in Count I that he was fully vaccinated against COVID-19 by the time he self-surrendered at FDC-Honolulu on August 11, 2021.  ECF No. 1 at PageID # 6.  He also tested negative for the virus.  *Id.*  At FDC-Honolulu, Aipoalani was initially housed in the "Quarantine unit" with an inmate who was unvaccinated and who had not been tested.  *Id.*  That inmate experienced nausea, chills, and headaches between August 11–13.  *Id.*  On August 14, officials moved Aipoalani to another cell.  *Id.*  Two days later, Aipoalani's former cellmate tested positive for COVID-19, and, the following day, Aipoalani also tested positive for the virus.  *Id.*  Aipoalani and at least one other inmate who received positive test results "were immediately moved to health services for isolation and observation." *Id.*

Following a rise in COVID cases at FDC-Honolulu in early 2022, Aipoalani tested positive for the virus a second time on January 24, 2022.  *Id.*  Officials again

---

[3]Aipoalani's factual allegations are accepted as true for purposes of screening.  *See Nordstrom v. Ryan*, 762 F.3d 903, 908 (9th Cir. 2014).

isolated Aipoalani, this time in the special housing unit ("SHU").  *Id.*  According to Aipoalani, he suffers symptoms associated with "long-term COVID" including blurry vision, feeling faint and lightheaded, and short-term memory loss.  *Id.*

Aipoalani alleges in Count II that, beginning on August 28, 2021, he shared a cell with an inmate who had "behavioral issues" and who had been "prescribed medication."  *Id.* at PageID # 7.  When not "properly medicated," this inmate acted "aggressively" toward Aipoalani.  *Id.*  Aipoalani describes his cellmate during these periods as "hostile and demonic."  *Id.*  On three unspecified occasions, Aipoalani asked unidentified officials to move him to another cell.  *Id.* Apparently, these requests were not granted.

Aipoalani alleges in Count III that conditions at FDC-Honolulu are dangerous because of benzene from neighboring Daniel K. Inouye International Airport and "high levels of petroleum . . . in buildings and facilities near and around" the airport.[4]  *Id.* at PageID # 9–10.

In his prayer for relief, Aipoalani asks for his sentence and that of his wife "to be fully commuted/reduced to zero," to have their convictions "expunged," and for three million dollars.  *Id.* at PageID # 11.

---

[4]Aipoalani generally notes the dangers of radon, but he does not allege that it is an issue at FDC-Honolulu.  ECF No. 1 at PageID # 9.

# III. DISCUSSION

## A. Dismissal of 42 U.S.C. § 1983 Claims

Aipoalani marked a box on the Complaint indicating that he is invoking the Court's jurisdiction pursuant to 28 U.S.C. § 1343(a)(3) and 42 U.S.C. § 1983. ECF No. 1 at PageID # 1.

Section 1343(a)(3) provides that district courts have original jurisdiction of "any civil action authorized by law . . . [t]o redress the deprivation, under color of any State law . . . of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens . . . within the jurisdiction of the United States[.]"  28 U.S.C. § 1343(a)(3).  Courts have described this paragraph as the "jurisdictional counterpart to § 1983[.]" *Golden State Transit Corp. v. City of Los Angeles*, 493 U.S. 103, 107 n.4 (1989); *Tongol v. Usery*, 601 F.2d 1091, 1099 (9th Cir. 1979).

Section 1983 provides that every person who, "under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights . . . secured by the Constitution . . . shall be liable to the party injured[.]" 42 U.S.C. § 1983.  Section 1983 therefore "provides a statutory cause of action where state officials acting under color of law violate constitutional rights."

*Benavidez v. Cnty. of San Diego*, 993 F.3d 1134, 1143 (9th Cir. 2021).  Section 1983 "provides no cause of action against federal [officials] acting under color of federal law."  *Billings v. United States*, 57 F.3d 797, 801 (9th Cir. 1995); *Daly-Murphy v. Winston*, 837 F.2d 348, 355 (9th Cir. 1987) ("There is no valid basis for a claim under section 1983 . . . against federal officials acting under color of federal law.")

Aipoalani is a federal prisoner in a federal prison who alleges that federal prison officials violated his rights under the Eighth Amendment.  *See* ECF No. 1 at PageID # 5–10.  Because Aipoalani does not allege that any Defendant was acting under color of state law, the court lacks jurisdiction under 28 U.S.C. § 1343(a)(3) and 42 U.S.C. § 1983.  *See Emory v. United States Dep't of Hous. & Urb. Dev.*, Civil No. 05-00671 SOM/LEK, 2006 WL 8451336, at *5 (D. Haw. Aug. 31, 2006) (dismissing claims under 42 U.S.C. § 1983 "[b]ecause the Complaint [did] not allege that Defendants acted pursuant to state law or were otherwise clothed with the authority of state law").

If Aipoalani intends to invoke this court's jurisdiction pursuant to 28 U.S.C. § 1331 and *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), he must consider the following legal standards before doing so in any amended complaint.

**B.  Joinder**

Aipoalani alleges that officials at FDC-Honolulu violated the Eighth Amendment by denying him adequate medical care (Count I), threatening his safety (Count II), and housing him in dangerous environmental conditions (Count III).  ECF No. 1 at PageID # 5–10.  He names as Defendants the warden, the chief medical officer, and the unit manager.  *Id.* at PageID # 1–2.

Under Fed. R. Civ. P. 18(a), governing joinder of claims, a plaintiff may bring multiple claims, related or not, in a lawsuit against a single defendant.  To name different defendants in the same lawsuit, however, a plaintiff must satisfy Fed. R. Civ. P. 20, governing joinder of parties.  Rule 20(a)(2) allows joinder of defendants only if the following two requirements are met:  (1) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (2) any question of law or fact common to all defendants will arise in the action.  Fed. R. Civ. P. 20(a)(2)(A)–(B); *Stribling v. Tobias*, 690 F. App'x 972, 973 (9th Cir. 2017).  Unrelated claims involving different defendants belong in different suits.  *See What v. Honolulu Police Dep't*, 2014 WL 176610, at *4–5 (D. Haw. Jan. 13, 2014).

Here, there is no apparent connection between the Complaint's three counts other than the fact that the underlying events occurred at FDC-Honolulu.  This is

not enough to satisfy the joinder rules.  *See Woods v. Curry*, No. C 10-1859 JSW (PR), 2013 WL 12222362, at *1 (N.D. Cal. May 2, 2013) (concluding that prisoner improperly joined claims "based on a wide variety of unrelated events that occurred at his prison").  If Aipoalani decides to file an amended pleading, any claim asserted therein must be permitted by either Rule 18 or Rule 20.  Aipoalani may state a single claim against a single defendant.  Pursuant to Rule 18, Aipoalani may then add any additional claims to his action that are against the same defendant.  Fed. R. Civ. P. 18.  Aipoalani may also add any additional claims against other defendants, if those claims arise from the same transaction, occurrence, or series of transactions as his original claim.  Fed. R. Civ. P. 20(a)(2).

Aipoalani may not pursue a combination of unrelated claims against various defendants in a single suit.  *See Char v. Kaiser Hosp.*, Civ. No. 18-00345 JAO-RLP, 2019 WL 80890, at *3 (D. Haw. Jan. 2, 2019) ("Unrelated claims involving different defendants must be brought in separate actions.").  He may, however, raise any unrelated claims in a separate action or actions.  *See D'Agirbaud v. Kam*, Civ. No. 20-00139 JAO-KJM, 2020 WL 3258408, at *5 (D. Haw. June 16, 2020) (explaining that dismissing complaint for misjoinder allowed plaintiff "to decide which related claims he will pursue in this action, and which claims he will bring in a new action").  Any attempt to join claims that are not permitted by the Federal

Rules of Civil Procedure will result in those claims being dismissed as improperly joined and, at a minimum, will result in delay in their adjudication.

## C. Legal Framework for *Bivens* Claims

In *Bivens*, the Supreme Court "recognized for the first time an implied right of action for damages against federal officers alleged to have violated a citizen's constitutional rights." *Hernandez v. Mesa*, 137 S. Ct. 2003, 2006 (2017) (per curiam). *Bivens* involved a suit against individual federal agents who violated the Fourth Amendment's prohibition against unreasonable searches and seizures. 403 U.S. at 389–90. Since *Bivens*, the Supreme Court has expanded this implied cause of action twice. *See Davis v. Passman*, 442 U.S. 228 (1979) (suit under the Fifth Amendment's Due Process Clause for gender discrimination by a United States Congressman); *Carlson v. Green*, 446 U.S. 14 (1980) (suit under the Eighth Amendment's Cruel and Unusual Punishment Clause for failure to provide adequate medical treatment by federal prison officials). "These three cases—*Bivens*, *Davis*, and *Carlson*—represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1855 (2017).

The Supreme Court "has made clear that expanding the *Bivens* remedy is now a 'disfavored' judicial activity." *Id.* at 1857 (quoting *Iqbal*, 556 U.S. at 675). "This is in accord with the Court's observation that it has 'consistently refused to

extend *Bivens* to any new context or new category of defendants.'"[5]  *Abbasi*,
137 S. Ct. at 1857 (quoting *Malesko*, 534 U.S. at 68).  Indeed, the Court has
suggested that "the analysis in [its] three *Bivens* cases might have been different if
they were decided today."  *Abbasi*, 137 S. Ct. at 1856.

In deciding whether a *Bivens* remedy is available, courts first consider
whether providing such a remedy is precluded by prior cases in which the Supreme
Court or the Ninth Circuit has declined to recognize an implied right of action.
*Lanuza v. Love*, 899 F.3d 1019, 1025 (9th Cir. 2018).  If a claim is precluded, that
is the end of the matter.  If a claim is not precluded, the court then applies a
two-step test.

At step one, the Court determines whether the plaintiff is seeking a *Bivens*
remedy in a new context.  *Ioane v. Hodges*, 939 F.3d 945, 951 (9th Cir. 2018).
The context is new "[i]f the case is different in a meaningful way from previous
*Bivens* cases decided by [the Supreme Court]."  *Abbasi*, 137 S. Ct. at 1859.  If the

---

[5]The Court declined to create a *Bivens* remedy in the following cases:  a First Amendment suit
against a federal employer, *Bush v. Lucas*, 462 U.S. 367, 390 (1983); a race-discrimination suit
against military officers, *Chappell v. Wallace*, 462 U.S. 296, 297 (1983); a substantive due
process suit against military officers, *United States v. Stanley*, 483 U.S. 669, 671–72 (1987); a
procedural due process suit against Social Security officials, *Schweiker v. Chilicky*, 487 U.S.
412, 414 (1988); a procedural due process suit against a federal agency for wrongful termination,
*FDIC v. Meyer*, 510 U.S. 471, 473–74 (1994); an Eighth Amendment suit against a private
prison operator, *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 63 (2001); a due process suit against
officials from the Bureau of Land Management, *Wilkie v. Robbins*, 551 U.S. 537, 547–548, 562
(2007); an Eighth Amendment suit against prison guards at a private prison, *Minneci v. Pollard*,
565 U.S. 118, 120 (2012); and a Fifth Amendment suit against Department of Justice officials,
*Abbasi*, 137 S. Ct. at 1860–63.

plaintiff is seeking a *Bivens* remedy in a new context, then the court proceeds to the second step.

At step two, the court may extend *Bivens* only if two conditions are met. "First, the plaintiff must not have any other adequate alternative remedy." *Ioane*, 939 F.3d at 951. "Second, there cannot be any 'special factors' that lead [the court] to believe that Congress, instead of the courts, should be the one to authorize a suit for money damages." *Id.* at 951–52 (internal quotation marks omitted). Although the Supreme Court has yet to define the term, "special factors," it has explained that "the inquiry must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Abbasi*, 137 S. Ct. at 1857–58.

## D. Official Capacity Claims

Aipoalani names Warden Derr, Dr. Kwon, and Robl in both their individual and official capacities. ECF No. 1 at PageID # 1–2.

"[A] *Bivens* action can be maintained against a defendant in his or her individual capacity only, and not in his or her official capacity." *Consejo de Desarrollo Economico de Mexicali, A.C. v. United States*, 482 F.3d 1157 (9th Cir. 2007) (quotation marks omitted and brackets in original). "This is because a

*Bivens* suit against a defendant in his or her official capacity would merely be another way of pleading an action against the United States, which would be barred by the doctrine of sovereign immunity." *Id.*  Thus, "[t]here is no such animal as a *Bivens* suit against a public official tortfeasor in his or her official capacity." *Solida v. McKelvey*, 820 F.3d 1090, 1094 (9th Cir. 2016) (quotation marks and citation omitted).

Any *Bivens* claims against Warden Derr, Dr. Kwon, and Robl in their official capacities cannot proceed.

## E.  Supervisory Liability

Aipoalani names as Defendants various supervisory officials, including the warden, the chief medical officer, and the unit manager.  ECF No. 1 at PageID # 1–2.

"In the limited settings where *Bivens* does apply . . . Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Iqbal*, 556 U.S. at 676.  This is because "[t]he purpose of *Bivens* is to deter the *officer*." *Abbasi*, 137 S. Ct. at 1860 (quotation marks and citation omitted).  "*Bivens* is not designed to hold officers responsible for acts of their subordinates." *Id.*

A *Bivens* claim must be "brought against the individual official for his or her own acts, not the acts of others." *Id.*; *see also Jones v. McFadden*, 2010 WL 2196849, at *3 (E.D. Cal. May 28, 2010) ("[W]hen a named defendant holds a supervisorial position, the causal link between him and the claimed constitutional violation must be specifically alleged."). Thus, to state a claim for relief under *Bivens* based on a theory of supervisory liability, the plaintiff must allege facts showing that supervisory defendants: (1) personally participated in the alleged deprivation of constitutional rights; (2) knew of the violations and failed to act to prevent them; or (3) promulgated or implemented a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation. *Id.* (citing *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)).

Aipoalani fails to say how the acts of Warden Derr, Dr. Kwon, or Robl allegedly caused him injury. Indeed, Aipoalani does not mention any of the Defendants in the Complaint's three counts. Any allegation by Aipoalani that these three supervisory prison officials are liable purely because of the acts of those under their supervision must be dismissed. *See Fries v. Kernan*, Case No. 1:18-cv-00652-LJO-SKO (PC), 2018 WL 11260954, at *8 (E.D. Cal. Dec. 5, 2018) ("[A]ny allegation that supervisory personnel . . . [are] somehow liable solely based on the acts of those under his or her supervision, does not state a

13

cognizable claim.").  For any claims against Warden Derr, Dr. Kwon, or Robl to

proceed, Aipoalani must plausibly allege that Warden Derr, Dr. Kwon, or Robl

violated his rights through their own actions.  *See Chavez v. United States*, 683

F.3d 1102, 1109 (9th Cir. 2012) ("*Bivens* claims cannot proceed on a theory of

*respondeat superior*, but must instead plead that a supervisor, by her 'own

individual actions,' violated the Constitution." (citation omitted)).

## F.  Eighth Amendment

The Eighth Amendment governs the treatment of convicted prisoners and

forbids "cruel and unusual punishments."  U.S. Const. amend. VIII; *see Sandoval*

*v. Cnty. of San Diego*, 985 F.3d 657, 67 (9th Cir. 2021).  Although the Constitution

"'does not mandate comfortable prisons,'" it does not "permit inhumane ones[.]"

*Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citation omitted).  Prison officials,

therefore, may not use excessive physical force against prisoners, they "must

ensure that inmates receive adequate food, clothing, shelter, and medical care, and

[they] must 'take reasonable measures to guarantee the safety of the inmates[.]'"

*Id.* (citations omitted).

### 1.  Medical Care

Aipoalani alleges in Count I that he was denied adequate medical care.  ECF

No. 1 at PageID # 5–6.

As already noted, "*Carlson* recognized an implied claim under the Eighth Amendment's cruel and unusual punishment clause for prison officials' failure to provide adequate medical care[.]" *Hoffman v. Preston*, 26 F.4th 1059, 1064 (9th Cir. 2022) (citation omitted).  "To establish a claim of inadequate medical care, a prisoner must first show a 'serious medical need' by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Edmo v. Corizon, Inc.*, 935 F.3d 757, 785 (9th Cir. 2019) (per curiam) (internal quotation marks omitted).  "If . . . a prisoner establishes a sufficiently serious medical need, that prisoner must then show the official's response to the need was deliberately indifferent." *Id.* at 786 (internal quotation marks and brackets omitted).  "To show deliberate indifference, the plaintiff must show that the course of treatment the official chose was medically unacceptable under the circumstances and that the official chose this course in conscious disregard of an excessive risk to the plaintiff's health." *Id.* (internal quotation marks and brackets omitted).  "Deliberate indifference is a 'high legal standard' beyond malpractice or gross negligence." *Balla v. Idaho*, 29 F.4th 1019, 1025–26 (9th Cir. 2022) (citation omitted).

Here, Aipoalani has not identified a "serious medical need."  Aipoalani acknowledges that he was fully vaccinated when he self-surrendered at FDC-Honolulu.  ECF No. 1 at PageID # 6.  Although Aipoalani tested positive for the

coronavirus on August 17, 2021, and again on January 24, 2022, he does not identify any of his resulting symptoms. Even if Aipoalani had a serious medical need, he fails to allege that an official's response to that need was deliberately indifferent. Instead, Aipoalani acknowledges that after he tested positive on August 17, 2021, officials "immediately moved [him] to health services for isolation and observation." *Id.* Officials also isolated Aipoalani after he tested positive on January 24, 2022. *Id.* To the extent Aipoalani asserts that he submitted "eight (8) COP-Outs," *id.*, he does not identify the substance of his grievances, nor does he say when he submitted them, who he submitted them to, or what he was told in response. Without more, Count I cannot proceed.

### 2. Threat to Safety

Aipoalani alleges in Count II that his safety was threatened by housing him with an inmate with "behavioral issues" and who was "prescribed medication." ECF No. 1 at PageID # 7–8.

The Supreme Court has not explicitly held that a *Bivens* remedy is available under the Eighth Amendment for a threat-to-safety claim. The Ninth Circuit, however, has allowed a *Bivens* claim under the Eighth Amendment for a federal prison official's deliberate indifference to prisoner safety. *See Doreh v. Rodriguez*, 723 F. App'x 530, 530 (9th Cir. 2018) ("[T]hese allegations are sufficient to state a deliberate indifference to safety claim."). Several district courts have also

16

recognized failure-to-protect claims under *Bivens*.  *See McDaniels v. United States*, No. 5:14-cv-02594-VBF-JDE, 2018 WL 7501292, at *5–6 (C.D. Cal. Dec. 28, 2018), *report and recommendation adopted*, 2019 WL 1045132 (C.D. Cal. Mar. 5, 2019); *Lee v. Matevousian*, No. 1:18-cv-00169-GSA-PC, 2018 WL 5603593, at *7–8 (E.D. Cal. Oct. 26, 2018); *Marquez v. United States*, Case No.: 3:18-cv-0434-CAB-NLS, 2018 WL 1942418, at *4 (S.D. Cal. Apr. 25, 2018).

Even assuming the existence of a *Bivens* remedy, Aipoalani fails to state a plausible claim.  *See Hernandez*, 137 S. Ct. at 2007 ("[D]isposing of a *Bivens* claim by resolving the constitutional question, while assuming the existence of a *Bivens* remedy—is appropriate in many cases."); *Ansari v. Martinez*, 859 F. App'x 842, 842 (9th Cir. 2021) ("The district court properly dismissed [the plaintiff's] Eighth Amendment claims because, even if a *Bivens* remedy is available for these claims, [the plaintiff] failed to allege facts sufficient to state a plausible claim.").

Prison officials "have a duty . . . to protect prisoners from violence at the hands of other prisoners."  *Id.* at 833 (quotation marks and citation omitted) (ellipsis in original).  A prison official violates the Eighth Amendment, however, only when two requirements are met.  "First, the deprivation must be objectively, sufficiently serious[.]"  *Id.* at 834.  "For a claim . . . based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm."  *Id.*  Second, the plaintiff must show deliberate

indifference—that is, that "the [prison] official [knew] of and disregard[ed] an excessive risk to inmate . . . safety." *Id.* at 837. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.*

Here, Aipoalani has not plausibly alleged that he faced a "substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Aipoalani states that his cellmate had "behavioral issues," was "prescribed medication," and "act[ed] aggressively" toward Aipoalani when he was "not properly medicated." ECF No. 1 at PageID # 7. Aipoalani does not say, however, how his cellmate "act[ed] aggressively" toward him, nor does he say how often this allegedly occurred. Indeed, Aipoalani does not assert that his cellmate ever harmed him or directly threatened to do so. The fact that Aipoalani's cellmate had "behavioral issues," without more, does not necessarily create a "substantial risk of serious harm." *See Dushane v. Sacramento Cnty. Jail*, 2014 WL 3867468, at *8 (E.D. Cal. Aug. 6, 2014) ("While . . . inmates may have been charged with violent crimes, plaintiff has alleged no facts showing that they posed an unreasonable risk of danger to him within the jail.").

Moreover, Aipoalani has not plausibly alleged that any Defendant acted with deliberate indifference to his safety. *Farmer*, 511 U.S. at 834. Although Aipoalani states that he submitted three requests to be moved, he does not say who he asked, when he did so, what he said in doing so, or what he was told in response. *Cf.*

*Colon v. Los Angeles Cnty. Jail*, 2019 WL 404168, at *3 (C.D. Cal. Jan. 31, 2019) ("[T]here are inadequate allegations as to who allegedly acted with deliberate indifference, how that person learned of plaintiff's serious medical need, what the person specifically did or did not do in response to that knowledge, and in what way those actions resulted in plaintiff's injury."). Thus, Count II also cannot proceed.

### 3.  Dangerous Environmental Conditions

Aipoalani alleges in Count III that conditions at FDC-Honolulu are dangerous because of benzene from neighboring Daniel K. Inouye International Airport and "high levels of petroleum . . . in buildings and facilities near and around" the airport.  *Id.* at PageID # 9–10.

Aipoalani's claims in Count III, however, appear to present a new *Bivens* context.  *See Rodriguez-Ramirez v. Sessions*, Case No. ED CV 18-289-MWF (PLA), 2019 WL 247225, at *4 (C.D. Cal. Jan. 17, 2019) (noting that plaintiff's allegation that defendants' failure to protect an inmate from dangerous environmental conditions appeared to expand the *Bivens* remedy).  The Court declines to decide whether "special factors" caution against extending *Bivens* to Aipoalani's dangerous environmental conditions claim during screening pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A, without briefing by the parties upon either a motion to dismiss or for summary judgment.  *See Williams v. Kobayashi*, Civ.

19

No. 1:18-cv-00336 DKW-RLP, 2018 WL 5258614, at *7 (D. Haw. Oct. 22, 2018) (declining to decide during screening whether special factors cautioned against extending Bivens to substantive due process claims).

Even if a *Bivens* remedy exists for an Eighth Amendment claim based on dangerous environmental conditions, Aipoalani fails to state a claim.  Aipoalani does not allege that the benzene or petroleum has harmed his health.  To the extent Aipoalani is alleging that he faces "an unreasonable risk of serious damage to his future health," he "must show that he himself is being exposed to unreasonably high levels of [the dangerous condition]."  *Helling v. McKinney*, 509 U.S. 25, 35 (1993).  As the Supreme Court has explained, determining whether conditions violate the Eighth Amendment "requires more than a scientific and statistical inquiry into the seriousness of the potential harm and the likelihood that such injury to health will actually be caused by exposure to [the dangerous condition]." *Id.* at 36.  "It also requires a court to assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk."  *Id.*  On top of this, Aipoalani must show that a prison official was deliberately indifferent to the dangerous condition.  *Id.*

Here, although Aipoalani identifies benzene and petroleum as environmental concerns at FDC-Honolulu, Aipoalani has not plausibly alleged that he is being

20

exposed to unreasonably high levels of either.  Although Aipoalani refers to "benzene poisoning" in the prison population, he does not say how many such cases there have been or when they occurred.  Moreover, Aipoalani has not plausibly alleged that a prison official was deliberately indifferent to a dangerous environmental condition.  To the extent Aipoalani asserts that "FDC Honolulu staff have been made aware of the situation," he does not identify the staff members with this awareness, nor does he say what these staff members were told, when they were told it, and how they responded.  Count III, therefore, also cannot proceed.

## G.  Relief

In his request for relief, in addition to asking for $3 million, Aipoalani asks for his sentence "to be fully commuted/reduced to zero."[6]  ECF No. 1 at PageID # 11.  He also asks that his "convictions [be] expunged."  Id.

"*Bivens* does not encompass injunctive and declaratory relief where . . . the equitable relief sought requires official government action."  *Solida*, 820 F.3d at 1093; *see Higazy v. Templeton*, 505 F.3d 161 (2d Cir. 2007) ("The only remedy

---

[6]To the extent Aipoalani seeks similar relief for his wife, he may not do so.  *See Leialoha v. Dep't of Pub. Safety*, Civil No. 21-00411 JAO-RT, 2021 WL 5361070, at *4 (D. Haw. Nov. 17, 2021); *see also Robinson v. Joya*, Civil No. 1:08-1339-JLS (BLM), 2010 WL 890437, at *13 (E.D. Cal. Mar. 8, 2010) ("Pro se litigants have no authority to represent anyone other than themselves; therefore, they lack the representative capacity to file motions and other documents on behalf of other prisoners." (citation omitted)).

available in a *Bivens* action is an award for monetary damages from defendants in their individual capacities."). Thus, to the extent Aipoalani seeks commutation of his sentence or expungement of his conviction, such relief is not available under *Bivens*.[7]

## IV.  **LEAVE TO AMEND**

Aipoalani's Complaint is DISMISSED with partial leave to amend. If Aipoalani wants this action to proceed, he must file an amended pleading on or before **May 20, 2022**. Aipoalani may not expand his claims beyond those already alleged herein or add new claims, without explaining how those new claims relate to the claims alleged in the Complaint. Claims that do not properly relate to those in the Complaint are subject to dismissal.

---

[7]"[A] prisoner may bring a non-*Bivens* action for injunctive relief to stop Eighth Amendment violations based on conditions of confinement." *Pinson v. Othon*, 2020 WL 6273410, at *5 (D. Ariz. Oct. 26, 2020). To bring such a claim, however, a prisoner must:  (1) invoke jurisdiction under 28 U.S.C. § 1331; (2) allege facts to state a colorable ongoing Eighth Amendment claim; (3) name as a defendant the person who would be responsible for carrying out any order for injunctive relief; and (4) request particular injunctive relief that is specifically targeted to resolving the ongoing Eighth Amendment violation. *Id.*; *see Carballo v. Barr*, 491 F. Supp. 3d 860, 867 (D. Nev. 2020) ("[A] plaintiff may sue a federal officer in his or her official capacity, invoking jurisdiction under 28 U.S.C. § 1331 and the court's inherent equitable powers, and seek injunctive relief to remedy alleged constitutional violations."). Here, Aipoalani does not invoke jurisdiction under 28 U.S.C. § 1331. Moreover, for the reasons set forth above, he fails to state a colorable Eighth Amendment claim. Finally, Aipoalani's requested relief—*i.e.*, commutation of his sentence and expungement of his conviction—is not specifically targeted to any alleged Eighth Amendment violation. *See* 18 U.S.C. § 3626(a)(1) ("The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right.").

Any amended complaint must comply with the Federal Rules of Civil Procedure and the Local Rules for the District of Hawaii.  *See Ramirez v. Cnty. of San Bernardino*, 806 F.3d 1002, 1008 (9th Cir. 2015).  Local Rule 10.4 requires that an amended complaint be complete in itself, without reference to any prior pleading.  An amended complaint generally supersedes a prior complaint, and it must also be short and plain, in compliance with Rule 8.  Defendants not renamed and claims not realleged in an amended complaint may be deemed voluntarily dismissed.  *See Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012).

Any amended pleading may not incorporate any part of the original Complaint by reference, but rather, any specific allegations must be retyped or rewritten in their entirety.  Any cause of action that is not raised in the amended pleading is waived.  *See id*.  Failure to file an amended complaint by **May 20, 2022** will result in automatic dismissal of this action.

## V.  28 U.S.C. § 1915(g)

If Aipoalani fails to file an amended complaint or is unable to amend his claims to cure their deficiencies, this dismissal may count as a "strike" under 28 U.S.C. § 1915(g).  Under this "3-strikes" provision, a prisoner may not bring a civil action or appeal a civil judgment in forma pauperis,

> if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous,

23

malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).

## VI.  <u>CONCLUSION</u>

(1)  The Complaint is DISMISSED for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b)(1), with partial leave to amend.

(2)  If Aipoalani wants this action to proceed, he must file an amended pleading that cures the noted deficiencies on or before **May 20, 2022**.

(3)  Failure to timely file an amended pleading will result in AUTOMATIC DISMISSAL of this suit without further notice.

(4)  ALTERNATIVELY, Aipoalani may voluntarily dismiss this action pursuant to Fed. R. Civ. P. 41(a)(1).

//

//

//

//

//

//

//

(5)  The Clerk is DIRECTED to send Aipoalani a blank prisoner civil rights complaint form so that he can comply with this order if he elects to file an amended pleading.

IT IS SO ORDERED.

DATED: April 27, 2022 at Honolulu, Hawaii



Derrick K. Watson
United States District Judge

_Aipoalani v. Derr, et al._; Civil No. 22-00093 DKW-RT; **ORDER DISMISSING COMPLAINT WITH PARTIAL LEAVE TO AMEND**