IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| HANALEI YUKUTARU AIPOALANI, #53121-509,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>ESTELLA DERR, *et al.*,<br><br>　　　　　Defendants. | CIVIL NO. 22-00093 DKW-RT<br><br>ORDER (1) DISMISSING FIRST AMENDED COMPLAINT WITH LEAVE TO AMEND, AND (2) DENYING MOTION TO REQUEST COURT APPOINTED COUNSEL |

　　　Before the Court is a First Amended Prisoner Civil Rights Complaint ("FAC"), ECF No. 8, filed by pro se Plaintiff Hanalei Yukutaru Aipoalani[1] pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).  Also before the Court is Aipoalani's Motion to Request Court Appointed Counsel.  ECF No. 7.  Aipoalani alleges in the FAC that two officials[2] at the FDC Honolulu violated the Eighth Amendment by denying him adequate medical care.  ECF No. 8 at 6–7.

---

[1] Aipoalani is currently incarcerated at the Federal Detention Center in Honolulu, Hawaii ("FDC Honolulu").  *See* ECF No. 8 at 1; Bureau of Prisons, https://www.bop.gov/inmateloc/ (select "Find By Number"; enter "53121-509" in "Number" field; and select "Search") (last visited June 3, 2022).

[2] Aipoalani names as Defendants Warden Estella Derr and Chief Medical Officer Nathan Kwon, M.D. ("Dr. Kwon") in their individual capacities.  ECF No. 8 at 1–2.  Aipoalani does not rename as a defendant in the FAC Unit Manager Kevin Robl.  *See id.*  Robl is therefore TERMINATED as a defendant.

As explained below, the FAC fails to state a plausible claim upon which relief may be granted. The FAC is therefore DISMISSED, albeit with leave to amend. *See* 28 U.S.C. §§ 1915(e)(2) & 1915A(b)(1). If Aipoalani wants this action to proceed, he must file an amended pleading that cures the noted deficiencies in his claims on or before June 30, 2022. In the alternative, Aipoalani may voluntarily dismiss this action pursuant to Fed. R. Civ. P. 41(a)(1), and any such dismissal will not count as a strike under 28 U.S.C. § 1915(g). Aipoalani's motion for court-appointed counsel is DENIED without prejudice.

## I. STATUTORY SCREENING

The Court is required to screen all in forma pauperis prisoner pleadings against government officials pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(a). *See Byrd v. Phx. Police Dep't*, 885 F.3d 639, 641 (9th Cir. 2018). Claims or complaints that are frivolous, malicious, fail to state a claim for relief, or seek damages from defendants who are immune from suit must be dismissed. *See Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010).

Screening under 28 U.S.C. §§ 1915(e)(2) and 1915A(a) involves the same standard of review as that used under Federal Rule of Civil Procedure 12(b)(6). *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) (per curiam). Under this standard, a complaint must "contain sufficient factual matter, accepted as true,

to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).  A claim is "plausible" when the facts alleged support a reasonable inference that the plaintiff is entitled to relief from a specific defendant for specific misconduct.  *See id.*

In conducting this screening, the Court liberally construes pro se litigants' pleadings and resolves all doubts in their favor.  *See Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted).  The Court must grant leave to amend if it appears the plaintiff can correct the defects in the complaint.  *See Lopez*, 203 F.3d at 1130.  When a claim cannot be saved by amendment, dismissal with prejudice is appropriate.  *See Sylvia Landfield Tr. v. City of Los Angeles*, 729 F.3d 1189, 1196 (9th Cir. 2013).

## II. BACKGROUND[3]

Aipoalani was fully vaccinated against COVID-19 when he self-surrendered at FDC Honolulu on August 11, 2021.  ECF No. 8 at 1.  At some point, Aipoalani also tested negative for the virus.  *Id.*  Aipoalani was initially housed in the "Quarantine unit" with an inmate who was unvaccinated and who had not been tested.  *Id.*  That inmate experienced nausea, chills, and migraine headaches between August 11–13.  *Id.*  On August 14, officials moved Aipoalani to another

---

[3]At screening, Aipoalani's well-pleaded factual allegations are accepted as true.  *See, e.g.*, *Nordstrom v. Ryan*, 762 F.3d 903, 908 (9th Cir. 2014).

cell. *Id.* On August 16, Aipoalani's former cellmate tested positive for COVID-19, and, the following day, Aipoalani tested positive for the virus. *Id.*

Prison officials immediately moved Aipoalani to "health services" for isolation and observation. *Id.* On August 18, prison officials moved Aipoalani to a "newly designated isolation unit." *Id.* While he was in isolation, Aipoalani submitted eight informal complaints, including one complaint to Warden Derr on August 19, 2021. *Id.* Aipoalani does not describe what he said in this complaint. On September 13, 2021, Aipoalani also submitted to Warden Derr a "Request for Compassionate Release/Reduction in Sentence." *Id.* In his request, Aipoalani described the "adverse effect" his COVID-19 infection had on his hypertension. *Id.* Aipoalani does not say if he complained about the medical care that he was receiving. Warden Derr denied Aipoalani's request and his subsequent appeal. *Id.*

Aipoalani also submitted informal complaints to Dr. Kwon on December 10, 16, 18, and 23, 2021, and January 1, 2022. *Id.* at 7. According to Aipoalani, Dr. Kwon responded to the January 1, 2022 complaint, but he does not say how. *Id.*

Following a rise in COVID cases at FDC Honolulu in early 2022, Aipoalani tested positive for the virus a second time on January 24, 2022. *Id.* at 7. Prison officials isolated Aipoalani in the special housing unit ("SHU"). *Id.* While in the SHU, Aipoalani was denied access to various prescription medications including losartan, hydrochlorothiazide, amlodipine, aspirin, metformin, and atorvastatin. *Id.*

These medications had been prescribed after Aipoalani's first bout with COVID-19 to treat his hypertension, diabetes, and high cholesterol. *Id.*

According to Aipoalani, he described his "worsening medical situation" in multiple informal complaints to Dr. Kwon on February 28, 2022, March 24, 2022, April 11, 2022, and April 15, 2022. *Id.* Dr. Kwon apparently responded to the February 28, 2022 complaint, but Aipoalani does not say how. *Id.*

Aipoalani commenced this action by signing the original Complaint on March 3, 2022. ECF No. 1 at 11. On April 27, 2022, the Court issued an Order Dismissing Complaint with Partial Leave to Amend. ECF No. 6. The Court began by dismissing Aipoalani's claims brought pursuant to 42 U.S.C. § 1983 because Aipoalani is a federal inmate in a federal prison who alleged that federal prison officials violated his rights under the Eighth Amendment. *Id.* at 5–6. The Court then set forth the relevant legal standards for any claims that Aipoalani might bring pursuant to *Bivens*. *Id.* at 5–22. Regarding Aipoalani's denial of adequate medical care claims, the Court explained that Aipoalani failed to identify a serious medical need, and he failed to allege that a prison official's response to that need was deliberately indifferent. *Id.* at 15–16. The Court dismissed the complaint with partial leave to amend. *Id.* at 22.

Aipoalani signed the FAC on April 29, 2022. ECF No. 8 at 10. Aipoalani alleges that Dr. Kwon and Warden Derr violated the Eighth Amendment by

denying him adequate medical care. *Id.* at 6–7. Aipoalani seeks at least three million dollars. *Id.* at 10.

### III. DISCUSSION

#### A. Legal Framework for *Bivens* Claims

In *Bivens*, the Supreme Court "recognized for the first time an implied right of action for damages against federal officers alleged to have violated a citizen's constitutional rights." *Hernandez v. Mesa*, 137 S. Ct. 2003, 2006 (2017) (per curiam) (internal quotation marks and citation omitted). *Bivens* involved a suit against individual federal agents who violated the Fourth Amendment's prohibition against unreasonable searches and seizures. *See Bivens*, 403 U.S. at 389–90. Since *Bivens*, the Supreme Court has expanded this implied cause of action only twice. *See Ziglar v. Abbasi*, 137 S. Ct. 1843, 1855 (2017) ("These three cases — *Bivens*, *Davis*, and *Carlson* — represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself."); *Davis v. Passman*, 442 U.S. 228 (1979) (suit under the Fifth Amendment's Due Process Clause for gender discrimination by a United States Congressman); *Carlson v. Green*, 446 U.S. 14 (1980) (suit under the Eighth Amendment's Cruel and Unusual Punishment Clause for failure to provide adequate medical treatment by federal prison officials).

The Supreme Court "has made clear that expanding the *Bivens* remedy is now a 'disfavored' judicial activity." *Abbasi*, 137 S. Ct. at 1857 (quoting *Iqbal*, 556 U.S. at 675). "This is in accord with the Court's observation that it has 'consistently refused to extend *Bivens* to any new context or new category of defendants.'"[4] *Id.* (quoting *Malesko*, 534 U.S. at 68). Indeed, the Court has suggested that "the analysis in [its] three *Bivens* cases might have been different if they were decided today." *Id.* at 1856.

In deciding whether a *Bivens* remedy is available, courts first consider whether providing such a remedy is precluded by prior cases in which the Supreme Court or the Ninth Circuit has declined to recognize an implied right of action. *See Lanuza v. Love*, 899 F.3d 1019, 1025 (9th Cir. 2018). If a claim is precluded, that is the end of the matter. If a claim is not precluded, courts then apply a two-step test.

---

[4]The Supreme Court declined to create a *Bivens* remedy in the following cases: a First Amendment suit against a federal employer, *see Bush v. Lucas*, 462 U.S. 367 (1983); a race discrimination suit against military officers, *see Chappell v. Wallace*, 462 U.S. 296 (1983); a substantive due process suit against military officers, *see United States v. Stanley*, 483 U.S. 669 (1987); a procedural due process suit against Social Security officials, *see Schweiker v. Chilicky*, 487 U.S. 412 (1988); a procedural due process suit against a federal agency for wrongful termination, *see FDIC v. Meyer*, 510 U.S. 471 (1994); an Eighth Amendment suit against a private halfway house operator under contract with the BOP, *see Corr. Servs. Corp. v. Malesko*, 534 U.S. 61 (2001); a claim of retaliation by Bureau of Land Management officials against plaintiff for his exercise of Fifth Amendment property rights, *see Wilkie v. Robbins*, 551 U.S. 537 (2007); an Eighth Amendment suit against prison guards at a private prison, *see Minneci v. Pollard*, 565 U.S. 118 (2012); and a Fifth Amendment suit against Department of Justice officials, *see Abbasi*, 137 S. Ct. 1843.

At step one, courts determine whether a plaintiff is seeking a *Bivens* remedy in a new context. *See Ioane v. Hodges*, 939 F.3d 945, 951 (9th Cir. 2018). The context is new "[i]f the case is different in a meaningful way from previous *Bivens* cases decided by [the Supreme Court]." *Abbasi*, 137 S. Ct. at 1859. If the plaintiff is seeking a *Bivens* remedy in a new context, then courts proceed to the second step.

At step two, courts may extend *Bivens* only if two conditions are met. "First, the plaintiff must not have any other adequate alternative remedy." *Ioane*, 939 F.3d at 951 (internal quotation marks and citation omitted). "Second, there cannot be any 'special factors' that lead the court to believe that Congress, instead of the courts, should be the one to authorize a suit for money damages." *Id.* at 951–52 (some internal quotation marks, brackets, and citation omitted). Although the Supreme Court has yet to define the term, "special factors," it has explained that "the inquiry must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Abbasi*, 137 S. Ct. at 1857–58.

### B. Eighth Amendment – Denial of Adequate Medical Care

Aipoalani alleges that Dr. Kwon and Warden Derr violated the Eighth Amendment by denying him adequate medical care. ECF No. 8 at 5–7.

The Eighth Amendment governs the treatment of convicted prisoners and forbids "cruel and unusual punishments." U.S. Const. amend. VIII; *see Sandoval v. County of San Diego*, 985 F.3d 657, 667 (9th Cir. 2021). Although the Constitution "'does not mandate comfortable prisons,'" it does not "permit inhumane ones." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citations omitted). Prison officials, therefore, may not use excessive physical force against prisoners, they "must ensure that inmates receive adequate food, clothing, shelter, and medical care, and [they] must 'take reasonable measures to guarantee the safety of the inmates.'" *Id.* (citations omitted).

As already noted, "*Carlson* recognized an implied claim under the Eighth Amendment's cruel and unusual punishment clause for prison officials' failure to provide adequate medical care." *Hoffman v. Preston*, 26 F.4th 1059, 1064 (9th Cir. 2022) (citation omitted). "To establish a claim of inadequate medical care, a prisoner must first show a 'serious medical need' by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Edmo v. Corizon, Inc.*, 935 F.3d 757, 785 (9th Cir. 2019) (per curiam) (some internal quotation marks and citation

omitted). "If . . . a prisoner establishes a sufficiently serious medical need, that prisoner must then show the official's response to the need was deliberately indifferent." *Id.* at 786 (internal quotation marks, brackets, and citation omitted). "To show deliberate indifference, the plaintiff must show that the course of treatment the official chose was medically unacceptable under the circumstances and that the official chose this course in conscious disregard of an excessive risk to the plaintiff's health." *Id.* (internal quotation marks, brackets, and citation omitted). "Deliberate indifference is a 'high legal standard' beyond malpractice or gross negligence." *Balla v. Idaho*, 29 F.4th 1019, 1025–26 (9th Cir. 2022) (citation omitted).

### 1. First COVID-19 Infection

Aipoalani first tested positive for COVID-19 on August 17, 2021. ECF No. 8 at 6. At some point, Aipoalani began feeling fatigued, lethargic, and cold to the touch. *Id.* at 7. He also experienced blurred vision, acne, rash, and dry skin. *Id.* He felt faint and lightheaded, and he experienced short-term memory loss. *Id.* According to Aipoalani, he lost more than forty pounds. *Id.*

Even if Aipoalani's symptoms after his first COVID-19 infection qualify as serious medical needs, he fails to allege that either Dr. Kwon or Warden Derr acted with deliberate indifference to those needs. Aipoalani acknowledges that, following his first positive test, prison officials immediately moved him to "health

services for isolation and observation." *Id.* On August 18, 2021, prison officials moved Aipoalani to a "newly designated isolation unit." *Id.* Aipoalani fails to explain how he was denied medical care during this time. For example, Aipoalani does not say when his various symptoms appeared, how he requested medical care, what he was told in response, or by whom.

To the extent Aipoalani alleges that he submitted eight informal complaints while he was in isolation, including one complaint to Warden Derr on August 19, 2021, Aipoalani does not say what symptoms he was experiencing at the time or what treatment he requested. To the extent Aipoalani further alleges that he made Warden Derr "aware of the situation" by submitting a request for compassionate release on September 13, 2021, Aipoalani does not assert that he complained to Warden Derr about a denial of medical care. *See id.* Instead, according to Aipoalani, his request was based on the "adverse effect" his COVID infection had on his hypertension. *Id.* Aipoalani does not say, however, how his hypertension was affected or what medical care he requested. In short, nothing suggests that Aipoalani complained to Warden Derr about the *medical care* he was receiving.

According to Aipoalani, he also submitted informal complaints to Dr. Kwon on December 10, 16, 18, and 23, 2021, and January 1, 2022. *Id.* at 7. According to Aipoalani, he described in these complaints his "worsening medical situation." *Id.* Once again, however, Aipoalani does not say when his various symptoms appeared

11

or what medical care he sought. In addition, while Aipoalani acknowledges that Dr. Kwon responded to at least one of his complaints, he does not describe Dr. Kwon's response. *Id.* Aipoalani's assertion that "health services" did not treat him is contradicted by Aipoalani's acknowledgment that various medications were prescribed to him for hypertension, diabetes, and high cholesterol between his two COVID-19 infections. *Id.*

Aipoalani's claims against Warden Derr and Dr. Kwon based on his first COVID-19 infection are DISMISSED with leave to amend.

### 2. Second COVID-19 Infection

Aipoalani tested positive for COVID-19 a second time on January 24, 2022. ECF No. 8 at 7. By that time, Aipoalani had been prescribed various medications for hypertension, diabetes, and high cholesterol. *Id.* Based on these medical conditions, Aipoalani has plausibly alleged that he had a serious medical need by the time of his second COVID infection. *See Deng v. Ryan*, No. CV 19-04589-PHX-JAT (JFM), 2021 WL 3709810, at *6 (D. Ariz. Aug. 20, 2021) (identifying diabetes and hypertension as serious medical needs); *Rodenhurst v. Hawaii*, No. CV 10-1237-PHX-GMS (MHB), 2010 WL 3719296, at *6 (D. Ariz. Sept. 15, 2010) (concluding that objective prong was met where various conditions, including high cholesterol, were found to be worthy of treatment), *aff'd sub nom. Rodenhurst v. Bauman*, 509 F. App'x 634 (9th Cir. 2013).

Aipoalani has not plausibly alleged, however, that either Dr. Kwon or Warden Derr acted with deliberate indifference to his serious medical needs. Although Aipoalani alleges that he was denied access to his prescribed medications while he was in the SHU for eight days, he does not say how often he was required to take the various medications, who denied him the medications, or the reasons given, if any, for the denial. *See* ECF No. 8 at 7.

Regarding any other COVID-related symptoms Aipoalani experienced after January 24, 2022, he fails to explain how either Warden Derr or Dr. Kwon was deliberately indifferent to his medical needs. Indeed, Aipoalani does not allege that he had any contact with Warden Derr after October 7, 2021—that is, when Warden Derr denied Aipoalani's appeal from the denial of his request for compassionate release. ECF No. 8 at 6. In addition, Aipoalani acknowledges that he was prescribed additional medications in April 2022. This renders implausible Aipoalani's assertion that prison officials have not treated him at all. *Id.* at 7.

Aipoalani's claims against Warden Derr and Dr. Kwon based on his second COVID-19 infection are also DISMISSED with leave to amend.

**C. Motion to Request Court Appointed Counsel**

Aipoalani requests court-appointed counsel. ECF No. 7. There is no constitutional right to counsel in a civil case where, as here, a litigant's liberty is not at issue. *See Lassiter v. Dep't of Soc. Servs.*, 452 U.S. 18, 25 (1981); *Wright v.*

13

*Dir. of Corr.*, 443 F. App'x 289, 293 (9th Cir. 2011). A court may request, but cannot compel, counsel to appear pro bono on a plaintiff's behalf. *See* 28 U.S.C. § 1915(e)(1); *Mallard v. U.S. Dist. Court for the S. Dist. of Iowa*, 490 U.S. 296, 310 (1989). The appointment of counsel pursuant to 28 U.S.C. § 1915(e)(1) is limited to cases presenting "exceptional circumstances." *Palmer v. Valdez*, 560 F.3d 965, 970 (9th Cir. 2009). In determining whether "exceptional circumstances" exist, courts consider "the likelihood of success on the merits as well as the ability of the [plaintiff] to articulate his claims *pro se* in light of the complexity of the legal issues involved." *Id.* (internal quotation marks and citation omitted). Neither of these considerations is dispositive, so they must be viewed together. *Id.*

Here, Aipoalani has not shown that his case presents exceptional circumstances. Indeed, Aipoalani offers no reasons for the Court to grant his request. *See* ECF No. 7 at 1. The issues presented are not complex, and, judging by the FAC, Aipoalani is well-able to articulate his claims *pro se*. In addition, Aipoalani cannot demonstrate a likelihood of success on the merits because he has yet to even state a plausible claim for relief. Accordingly, the Motion to Request Court Appointed Counsel is DENIED without prejudice to Aipoalani filing another request after any amended pleading that he might file is screened, served, and Defendants have filed an Answer or other response.

## IV. **LEAVE TO AMEND**

Aipoalani's FAC is DISMISSED with leave to amend to address the deficiencies identified above. If Aipoalani wants this action to proceed, he must file an amended pleading on or before June 30, 2022. Aipoalani may not expand his claims beyond those already alleged herein or add new claims, without explaining how those new claims relate to the claims alleged in the FAC. Claims that do not properly relate to those in the FAC are subject to dismissal.

Any amended complaint must comply with the Federal Rules of Civil Procedure and the Local Rules for the District of Hawaii. *See Ramirez v. County of San Bernardino*, 806 F.3d 1002, 1008 (9th Cir. 2015). Local Rule 10.4 requires that an amended complaint be complete in itself, without reference to any prior pleading. An amended complaint generally supersedes a prior complaint, and it must also be short and plain, in compliance with Rule 8. Defendants not renamed and claims not realleged in an amended complaint may be deemed voluntarily dismissed. *See Lacey v. Maricopa County*, 693 F.3d 896, 928 (9th Cir. 2012). Any amended pleading may not incorporate any part of the FAC by reference, but rather, any specific allegations must be retyped or rewritten in their entirety. Any cause of action that is not raised in the amended pleading is waived. *See id*. Failure to file an amended complaint by June 30, 2022 will result in automatic dismissal of this action.

## V. 28 U.S.C. § 1915(g)

If Aipoalani fails to file an amended complaint or is unable to amend his claims to cure their deficiencies, this dismissal may count as a "strike" under 28 U.S.C. § 1915(g). Under this "3-strikes" provision, a prisoner may not bring another civil action or appeal a civil judgment in forma pauperis,

> if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).

## VI. CONCLUSION

(1) The FAC, ECF No. 8, is DISMISSED for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b)(1), with leave to amend.

(2) If Aipoalani wants this action to proceed, he must file an amended pleading that cures the noted deficiencies on or before June 30, 2022.

(3) Failure to timely file an amended pleading will result in AUTOMATIC DISMISSAL of this suit without further notice.

(4) ALTERNATIVELY, Aipoalani may voluntarily dismiss this action pursuant to Fed. R. Civ. P. 41(a)(1), and such a dismissal will not count as a strike under 28 U.S.C. § 1915(g).

(5) The Motion to Request Court Appointed Counsel, ECF No. 7, is DENIED without prejudice.

(6) The Clerk is DIRECTED to send Aipoalani a blank prisoner civil rights complaint form so that he can comply with this order if he elects to file an amended pleading.

IT IS SO ORDERED.

DATED: June 9, 2022 at Honolulu, Hawaii



/s/ Derrick K. Watson
Derrick K. Watson
United States District Judge

*Aipoalani v. Derr, et al.*; Civil No. 22-00093 DKW-RT; **ORDER (1) DISMISSING FIRST AMENDED COMPLAINT WITH LEAVE TO AMEND, AND (2) DENYING MOTION TO REQUEST COURT APPOINTED COUNSEL**