IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| HANALEI YUKUTARU AIPOALANI, #53121-509,<br><br>  Plaintiff,<br><br>  v.<br><br>ESTELA DERR, *et al.*,<br><br>  Defendants. | CIVIL NO. 22-00093 DKW-RT<br><br>ORDER DISMISSING SECOND AMENDED COMPLAINT AND ACTION |

Before the Court is a Second Amended Prisoner Civil Rights Complaint ("SAC"), ECF No. 10, filed by pro se Plaintiff Hanalei Yukutaru Aipoalani[1] pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). Aipoalani alleges in the SAC that three officials[2] at FDC Honolulu violated the Eighth Amendment by denying him adequate medical care. ECF No. 10 at 5–12.

---

[1]Aipoalani is currently incarcerated at the Federal Detention Center in Honolulu, Hawaii ("FDC Honolulu"). *See* ECF No. 10 at 1; Bureau of Prisons, https://www.bop.gov/inmateloc/ (select "Find By Number"; enter "53121-509" in "Number" field; and select "Search") (last visited July 14, 2022).

[2]Aipoalani names as Defendants Warden Estela Derr ("Warden Derr"), Chief Medical Officer Nathan Kwon, M.D. ("Dr. Kwon"), and Nurse Practitioner R. Johnson ("Nurse Johnson") in their individual capacities. ECF No. 10 at 1–2.

As explained below, the SAC fails to state a claim upon which relief may be granted because Aipoalani has not plausibly alleged that any Defendant was deliberately indifferent to a serious medical need. The SAC is therefore DISMISSED. *See* 28 U.S.C. §§ 1915(e)(2) & 1915A(b)(1). Because Aipoalani has had three opportunities to state a colorable claim for relief and has been unable to do so, this dismissal is without leave to amend. This dismissal may count as a strike under 28 U.S.C. § 1915(g).

## I. STATUTORY SCREENING

The Court is required to screen all in forma pauperis prisoner pleadings against government officials pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(a). *See Byrd v. Phx. Police Dep't*, 885 F.3d 639, 641 (9th Cir. 2018). Claims or complaints that are frivolous, malicious, fail to state a claim for relief, or seek damages from defendants who are immune from suit must be dismissed. *See Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010).

Screening under 28 U.S.C. §§ 1915(e)(2) and 1915A(a) involves the same standard of review as that used under Federal Rule of Civil Procedure 12(b)(6). *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) (per curiam). Under this standard, a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009) (internal quotation marks and citation omitted). A claim is "plausible" when the facts alleged support a reasonable inference that the plaintiff is entitled to relief from a specific defendant for specific misconduct. *See id.*

In conducting this screening, the Court liberally construes pro se litigants' pleadings and resolves all doubts in their favor. *See Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted). The Court must grant leave to amend if it appears the plaintiff can correct the defects in the complaint. *See Lopez*, 203 F.3d at 1130. When a claim cannot be saved by amendment, dismissal with prejudice is appropriate. *See Sylvia Landfield Tr. v. City of Los Angeles*, 729 F.3d 1189, 1196 (9th Cir. 2013).

## II. BACKGROUND[3]

### A. First COVID-19 Infection

Aipoalani was fully vaccinated against COVID-19 when he self-surrendered at FDC Honolulu on August 11, 2021. ECF No. 10 at 6. He was initially housed in a "Quarantine unit" with an inmate who was unvaccinated and who had not been tested for the virus. *Id.* at 6. That inmate experienced nausea, chills, and migraine headaches between August 11–13. *Id.* On August 14, officials moved Aipoalani to another cell. *Id.*

---

[3]At screening, Aipoalani's well-pleaded factual allegations are accepted as true. *See, e.g.*, *Nordstrom v. Ryan*, 762 F.3d 903, 908 (9th Cir. 2014).

Aipoalani's former cellmate tested positive for COVID-19 on August 16, and, the following day, Aipoalani tested positive for the virus. *Id.* Prison officials immediately moved Aipoalani to "health services" for isolation and observation. *Id.* On August 18, prison officials moved Aipoalani to a "newly designated isolation unit." *Id.* at 6. Aipoalani remained in isolation until August 28, 2021. *Id*. at 8.

While in isolation, Aipoalani submitted at least eight informal complaints. *Id.* at 6. These complaints related to the fact that Aipoalani had been housed with an inmate who caught the virus. *Id.* at 6, 9. On September 13, 2021, Aipoalani submitted to Warden Derr a "Request for Compassionate Release/Reduction in Sentence." *Id.* at 6. In his request, Aipoalani noted that he had contracted COVID-19 and that he was living with hypertension. *Id.*

**B.     Hypertension**

Aipoalani had been diagnosed with hypertension at some point before he arrived at FDC Honolulu. *Id*. at 8. Aipoalani's outside doctor had prescribed the drug Lisinopril to treat the condition. *Id.* During Aipoalani's initial health assessment at FDC Honolulu, Dr. Kwon also wrote Aipoalani a prescription for Lisinopril. *Id.*

After Aipoalani tested positive for COVID-19 and was moved to isolation on August 18, Nurse Johnson performed another health assessment. *Id.* During

4

this assessment, Nurse Johnson suspected that Aipoalani might be allergic to Lisinopril. *Id.* Nurse Johnson issued an order, co-signed by Dr. Kwon, discontinuing Aipoalani's prescription for Lisinopril. *Id.* In its place, Nurse Johnson prescribed Losartan, another drug used to treat hypertension. *Id.*

Nurse Johnson saw Aipoalani again on September 3, 2021. *Id.* During that visit, Nurse Johnson prescribed an additional hypertension medication, Hydrochlorothiazide. *Id.* On October 21, 2021, another prison official prescribed a third medication, Amlodipine, to treat Aipoalani's hypertension. *Id.* When Nurse Johnson saw Aipoalani again on November 17, 2021, Nurse Johnson doubled his dose of Amlodipine. *Id.*

Dr. Kwon saw Aipoalani again on November 30, 2021. *Id.* During this visit, Dr. Kwon prescribed Metformin to treat Aipoalani's diabetes and Atorvastatin to treat his high cholesterol. *Id.* Although Aipoalani had submitted informal complaints to Dr. Kwon on October 21, 2021, and November 5 and 6, 2021, describing other symptoms, including blurred vision, hearing loss, and fatigue, Aipoalani does not allege that he reported any of these issues, or any issues related to his hypertension, to Dr. Kwon during the November 30, 2021 appointment.

Aipoalani submitted additional informal complaints to Dr. Kwon on December 10, 16, 18, and 23, 2021, and January 1, 2022. *Id.* at 10–11. In these

complaints, Aipoalani reported feeling cold, fatigued, and lightheaded. *Id*. at 10–11. He also reported experiencing blurred vision. *Id*. at 11.

Dr. Kwon provided at least one written response to Aipoalani's complaints, stating that he had spoken with an eye doctor who was aware of Aipoalani's need for an eye exam. *Id.* Dr. Kwon also informed Aipoalani that he had scheduled a sick call appointment for him. *Id.* Finally, Dr. Kwon instructed Aipoalani to notify staff of "any urgent or emergent concerns." *Id.*

**C.      Second COVID-19 Infection**

Following a rise in COVID cases at FDC Honolulu in early 2022, Aipoalani tested positive for the virus a second time on January 24, 2022. *Id.* at 7. Prison officials isolated Aipoalani in the special housing unit ("SHU") beginning on January 26, 2022. *Id.* at 11. Before he was moved, Aipoalani was told to pack up his personal belongings, including his medications. *Id*. Aipoalani complied with this instruction. *Id*.

On January 27, 2022, Aipoalani asked an unidentified correctional officer in the SHU for his medications. *Id*. A couple of hours later, that officer told Aipoalani to ask the "pill line" for his medications that evening. *Id*. When Aipoalani did this, however, another correctional officer told Aipoalani that he did not have the medications. *Id*. That day, Aipoalani submitted an informal complaint to Warden Derr regarding the issue. *Id*.

Six days later, on February 2, 2022, Aipoalani received monthly refills for some of his medications. *Id*. at 11–12. It appears that Aipoalani had access to all his medications by February 4, 2022 when he was released from the SHU. *Id*. at 12.

**D.    Procedural Background**

Aipoalani commenced this action by signing the original Complaint on March 3, 2022. ECF No. 1 at 11. On April 27, 2022, the Court issued an Order Dismissing Complaint with Partial Leave to Amend. ECF No. 6. The Court began by dismissing Aipoalani's claims brought pursuant to 42 U.S.C. § 1983 because Aipoalani is a federal inmate in a federal prison who alleged that federal prison officials violated his rights under the Eighth Amendment. *Id.* at 5–6. The Court then set forth the relevant legal standards for any claims that Aipoalani might bring pursuant to *Bivens*. *Id.* at 5–22. Regarding Aipoalani's denial of adequate medical care claims, the Court explained that Aipoalani failed to identify a serious medical need, and he failed to allege that a prison official's response to that need was deliberately indifferent. *Id.* at 15–16. The Court dismissed the complaint with partial leave to amend. *Id.* at 22.

Aipoalani signed the FAC on April 29, 2022. ECF No. 8 at 10. On June 9, 2022, the Court issued an Order Dismissing First Amended Complaint with Leave

to Amend.[4]  ECF No. 9.  Regarding Aipoalani's first COVID-19 infection, the Court concluded that Aipoalani failed to allege that a named defendant acted with deliberate indifference to a serious medical need.  *Id.* at 10–12.  Specifically, the Court noted that Aipoalani did not say when his various symptoms appeared or what medical care he sought.  *Id.* at 11–12.

Regarding Aipoalani's second COVID-19 infection, the Court also concluded that Aipoalani had not alleged that a named defendant acted with deliberate indifference.  *Id.* at 12–13.  To the extent Aipoalani was denied access to his medications while he was in the SHU, the Court noted that Aipoalani did not identify the prison official responsible for the deprivation.  *Id.* at 13.

Aipoalani signed the SAC on June 15, 2022.  ECF No. 10 at 15.  Aipoalani alleges that Warden Derr, Dr. Kwon, and a third prison official, Nurse Johnson, denied him adequate medical care in connection with his hypertension and two bouts with COVID-19.  *Id.* at 6–12.  Aipoalani seeks at least "three million U.S. dollars."  *Id.* at 15.

---

[4]In the same Order, the Court denied Aipoalani's Motion to Request Court Appointed Counsel. *See* ECF No. 9; *see also* ECF No. 7.

### III. **DISCUSSION**

A.   **Legal Framework for *Bivens* Claims**

In *Bivens*, the Supreme Court "recognized for the first time an implied right of action for damages against federal officers alleged to have violated a citizen's constitutional rights." *Hernandez v. Mesa*, 137 S. Ct. 2003, 2006 (2017) (per curiam) (internal quotation marks and citation omitted). *Bivens* involved a suit against individual federal agents who violated the Fourth Amendment's prohibition against unreasonable searches and seizures. *See Bivens*, 403 U.S. at 389–90. Since *Bivens*, the Supreme Court has expanded this implied cause of action only twice. *See Ziglar v. Abbasi*, 137 S. Ct. 1843, 1855 (2017) ("These three cases — *Bivens*, *Davis*, and *Carlson* — represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself."); *Davis v. Passman*, 442 U.S. 228 (1979) (suit under the Fifth Amendment's Due Process Clause for gender discrimination by a United States Congressman); *Carlson v. Green*, 446 U.S. 14 (1980) (suit under the Eighth Amendment's Cruel and Unusual Punishment Clause for failure to provide adequate medical treatment by federal prison officials).

The Supreme Court "has made clear that expanding the *Bivens* remedy is now a 'disfavored' judicial activity." *Abbasi*, 137 S. Ct. at 1857 (quoting *Iqbal*, 556 U.S. at 675). "This is in accord with the Court's observation that it has

'consistently refused to extend *Bivens* to any new context or new category of defendants.'"[5] *Id.* (quoting *Malesko*, 534 U.S. at 68). Indeed, the Supreme Court has indicated that "if [the Court] were called to decide *Bivens* today, [it] would decline to discover any implied causes of action in the Constitution." *Egbert*, 142 S. Ct. at 1809.

**B.  Eighth Amendment – Denial of Adequate Medical Care**

Aipoalani alleges that Warden Derr, Dr. Kwon, and Nurse Johnson violated the Eighth Amendment by denying him adequate medical care. ECF No. 10 at 5–12.

The Eighth Amendment governs the treatment of convicted prisoners and forbids "cruel and unusual punishments." U.S. Const. amend. VIII; *see Sandoval v. County of San Diego*, 985 F.3d 657, 667 (9th Cir. 2021). Although the

---

[5]The Supreme Court declined to create a *Bivens* remedy in the following cases: a First Amendment suit against a federal employer, *see Bush v. Lucas*, 462 U.S. 367 (1983); a race discrimination suit against military officers, *see Chappell v. Wallace*, 462 U.S. 296 (1983); a substantive due process suit against military officers, *see United States v. Stanley*, 483 U.S. 669 (1987); a procedural due process suit against Social Security officials, *see Schweiker v. Chilicky*, 487 U.S. 412 (1988); a procedural due process suit against a federal agency for wrongful termination, *see FDIC v. Meyer*, 510 U.S. 471 (1994); an Eighth Amendment suit against a private halfway house operator under contract with the BOP, *see Corr. Servs. Corp. v. Malesko*, 534 U.S. 61 (2001); a claim of retaliation by Bureau of Land Management officials against plaintiff for his exercise of Fifth Amendment property rights, *see Wilkie v. Robbins*, 551 U.S. 537 (2007); a suit under the Fifth, Eighth, and Fourteenth Amendments against United States Public Health Service personnel, *see Hui v. Castaneda*, 559 U.S. 799 (2010); an Eighth Amendment suit against prison guards at a private prison, *see Minneci v. Pollard*, 565 U.S. 118 (2012); a Fifth Amendment suit against Department of Justice officials, *see Abbasi*, 137 S. Ct. 1843; a Fourth and Fifth Amendment suit against a United States Border Patrol agent, *Hernandez v. Mesa*, 140 S. Ct. 739 (2020); and a First and Fourth Amendment suit against a United States Border Patrol Agent, *Egbert v. Boule*, 142 S. Ct. 1793 (2022).

Constitution "'does not mandate comfortable prisons,'" it does not "permit inhumane ones." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citations omitted). Prison officials, therefore, may not use excessive physical force against prisoners, they "must ensure that inmates receive adequate food, clothing, shelter, and medical care, and [they] must 'take reasonable measures to guarantee the safety of the inmates.'" *Id.* (citations omitted). As already noted, "*Carlson* recognized an implied claim under the Eighth Amendment's cruel and unusual punishment clause for prison officials' failure to provide adequate medical care." *Hoffman v. Preston*, 26 F.4th 1059, 1064 (9th Cir. 2022) (citation omitted).

"To establish a claim of inadequate medical care, a prisoner must first show a 'serious medical need' by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Edmo v. Corizon, Inc.*, 935 F.3d 757, 785 (9th Cir. 2019) (per curiam) (some internal quotation marks and citation omitted).

"If . . . a prisoner establishes a sufficiently serious medical need, that prisoner must then show the official's response to the need was deliberately indifferent." *Id.* at 786 (internal quotation marks, brackets, and citation omitted). "To show deliberate indifference, the plaintiff must show that the course of treatment the official chose was medically unacceptable under the circumstances and that the official chose this course in conscious disregard of an excessive risk to

11

the plaintiff's health." *Id.* (internal quotation marks, brackets, and citation omitted). "Deliberate indifference is a 'high legal standard' beyond malpractice or gross negligence." *Balla v. Idaho*, 29 F.4th 1019, 1025–26 (9th Cir. 2022) (citation omitted).

### 1. First COVID-19 Infection

Aipoalani first tested positive for COVID-19 on August 17, 2021. ECF No. 10 at 6. At some point, Aipoalani began feeling fatigued, lethargic, and cold to the touch. *Id.* at 7. He also experienced hearing loss, blurred vision, acne, rash, dry skin, memory loss, and lightheadedness. *Id.* at 7, 9. According to Aipoalani, he lost more than forty pounds. *Id.* at 8.

Even if Aipoalani's symptoms after his first COVID-19 infection qualify as serious medical needs, he fails to allege that Warden Derr, Dr. Kwon, or Nurse Johnson acted with deliberate indifference to those needs. Aipoalani acknowledges that, upon testing positive, prison officials immediately moved him to "health services for isolation and observation." *Id.* at 6. On August 18, 2021, prison officials moved Aipoalani to a "newly designated isolation unit." *Id.* Aipoalani remained isolated for ten days. *Id.* at 9. Aipoalani does not allege that he experienced any symptoms or that any Defendant denied him medical care during this period.

To the extent Aipoalani alleges that he submitted eight informal complaints while he was in isolation, including two complaints to Warden Derr, Aipoalani does not allege that he was seeking any medical treatment via those complaints. Instead, he was complaining about the circumstances that might have caused him to contract the virus. *See id.* at 6, 9. Likewise, to the extent Aipoalani alleges that he made Warden Derr "aware of the situation" by submitting a request for compassionate release on September 13, 2021, Aipoalani does not assert that he complained to Warden Derr about any denial of medical care. *See id.* at 6. Instead, according to Aipoalani, his request was based on his contracting COVID-19 and the fact that he had hypertension. *Id.* Nothing suggests that Aipoalani complained to Warden Derr about the *medical care* that he was receiving during his isolation.

According to Aipoalani, he submitted informal complaints to Dr. Kwon on October 21, 2021, and November 5 and 6, 2021. *Id.* at 9. In these written complaints, Aipoalani described fatigue, blurred vision, hearing loss, and lightheadedness. *Id.* Aipoalani does not allege, however, that he informed Dr. Kwon of these symptoms when the two met in person on November 30, 2021. *Id.* During that encounter, after reviewing the results of Aipoalani's blood work, Dr. Kwon prescribed Metformin for Aipoalani's diabetes and Atorvastatin for his high

cholesterol. *Id*. Nothing suggests that Dr. Kwon knew of or disregarded any serious medical need.

Aipoalani submitted additional informal complaints to Dr. Kwon on December 10, 16, 18, and 23, 2021, and January 1, 2022, reporting blurred vision, feeling cold, fatigue, and lightheadedness. *Id*. at 10–11. Dr. Kwon issued at least one written response, confirming that Aipoalani was on the waiting list for an optometry appointment. *Id*. at 11. Dr. Kwon stated that he would call the scheduler, and he in fact confirmed with the doctor that Aipoalani needed to be seen. *Id*. Dr. Kwon also scheduled a "sick call appointment" for Aipoalani. *Id*. Dr. Kwon specifically instructed Aipoalani to "to notify staff immediately [of] any urgent or emergent concerns." *Id*.

Given all of this, Aipoalani has not plausibly alleged that Dr. Kwon, or any other Defendant, was deliberately indifferent to a serious medical need after his first COVID-19 infection. *See Broughton v. Cutter Lab'ys*, 622 F.2d 458, 460 (9th Cir. 1980) (per curiam) ("Before it can be said that a prisoner's civil rights have been abridged, however, the indifference to his medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action."). To the extent Aipoalani thinks that he should have received different treatment, that does not constitute deliberate indifference. *See Edmo*, 935 F.3d at 786 ("Typically, '[a] difference of opinion between a physician and the

14

prisoner . . . concerning what medical care is appropriate does not amount to deliberate indifference.'" (alteration in original and citation omitted)).

Aipoalani's claims against Warden Derr, Dr. Kwon, and Nurse Johnson based on his first COVID-19 infection are DISMISSED. Because Aipoalani has had three opportunities to state a plausible claim based on his first COVID-19 infection and has failed to do so, this dismissal is without leave to amend. *See Sylvia Landfield Tr.*, 729 F.3d at 1196; *see also Edstrom v. Anheuser-Busch Inbev SA/NV*, 647 F. App'x 733, 736 (9th Cir. 2016) ("After two opportunities to amend their complaint, Plaintiffs failed to identify any additional factual allegations that could save their complaint from dismissal. Accordingly, the district court's decision to dismiss Plaintiffs' complaint without leave to amend was not an abuse of discretion.").

### 2. Hypertension

Aipoalani was diagnosed with hypertension prior to arriving at FDC Honolulu. *Id.* at 8. Hypertension can be a serious medical need. *See Deng v. Ryan*, No. CV 19-04589-PHX-JAT (JFM), 2021 WL 3709810, at *6 (D. Ariz. Aug. 20, 2021) (identifying hypertension as a serious medical need). Aipoalani has not, however, plausibly alleged that any Defendant acted with deliberate indifference to his hypertension.

Aipoalani acknowledges that, after performing his initial health assessment, Dr. Kwon prescribed Lisinopril—that is, the same drug Aipoalani had been prescribed to treat his hypertension prior to arriving at FDC Honolulu. ECF No. 10 at 8. After suspecting that Aipoalani could be allergic to Lisinopril, Nurse Johnson issued an order discontinuing that medication and prescribing Losartan as a replacement. *Id.* Dr. Kwon also signed this order. *Id.*

Aipoalani also received a prescription for another drug, Hydrochlorothiazide, after he met with Nurse Johnson on September 3, 2021. *Id.* Aipoalani was prescribed a third medication, Amlodipine, after he met with another prison health official on October 21, 2021. *Id.* Nurse Johnson subsequently doubled Aipoalani's prescribed dose of Amlodipine. *Id.* When Aipoalani voiced concern that the "cocktail of hypertension medication" might cause blood clots, Nurse Johnson prescribed aspirin on February 16, 2022. *Id.* at 9.

Rather than suggesting deliberate indifference by any Defendant, these allegations show a continuous effort by prison officials to combat Aipoalani's hypertension. Any claims based on the treatment Aipoalani received related to his hypertension are, therefore, DISMISSED. Because any amendment would be futile, this dismissal is without leave to amend. *See Sylvia Landfield Tr.*, 729 F.3d at 1196.

### 3. Second COVID-19 Infection

Aipoalani tested positive for COVID-19 a second time on January 24, 2022. ECF No. 10 at 7. By that time, as noted above, Aipoalani had been prescribed various medications for hypertension, diabetes, and high cholesterol. Based on these medical conditions, Aipoalani has plausibly alleged that he had serious medical needs by the time of his second COVID infection. *See Deng*, 2021 WL 3709810, at *6 (identifying diabetes and hypertension as serious medical needs); *Rodenhurst v. Hawaii*, No. CV 10-1237-PHX-GMS (MHB), 2010 WL 3719296, at *6 (D. Ariz. Sept. 15, 2010) (concluding that objective prong was met where various conditions, including high cholesterol, were found to be worthy of treatment), *aff'd sub nom. Rodenhurst v. Bauman*, 509 F. App'x 634 (9th Cir. 2013).

Aipoalani has not plausibly alleged, however, that Warden Derr, Dr. Kwon, or Nurse Johnson acted with deliberate indifference to these serious medical needs. Although Aipoalani alleges that he was denied access to his prescribed medications while he was in the SHU for eight days, he does not allege that Warden Derr, Dr. Kwon, or Nurse Johnson had anything to do with this. Instead, Aipoalani alleges that he asked an unidentified correctional officer to provide him with his medications on January 27, 2022. ECF No. 10 at 11. The officer instructed Aipoalani to ask the "pill line" for his medication that evening. *Id.* When

Aipoalani did so, however, another officer stated that he did not have Aipoalani's medications. *Id.* Aipoalani has not plausibly alleged that Warden Derr, Dr. Kwon, or Nurse Johnson had anything to do with these events.

Aipoalani alleges that he submitted an informal complaint to Warden Derr regarding access to his medications on January 27, 2022. *Id*. at 11. Aipoalani does not allege, however, that he asked correctional officers for his medications on any day other than January 27. In addition, Aipoalani acknowledges that he received refills for some of his medications on February 2, 2022. *Id*. Aipoalani does not allege that Warden Derr personally knew about the issue prior to this date. It also appears that Aipoalani had access to all his medications by February 4, 2022 when he was released from the SHU. *Id*. Given, at most, the temporary nature of the deprivation on a single occasion, Aipoalani has not plausibly alleged that any Defendant knew of and disregarded a serious medical need. *See O'Loughlin v. Doe*, 920 F.2d 614, 617 (9th Cir. 1990) (noting that "isolated occurrences of neglect do not amount to a constitutional violation, where plaintiff claimed that defendants "repeatedly fail[ed] to satisfy his requests for aspirins and antacids to alleviate his 'headaches, nausea and pains'"); *see also Rust v. Chino Prison Healthcare Providers*, Case No. 5:17-cv-00556-JAK-KES, 2017 WL 10560530, at *6 (C.D. Cal. Apr. 28, 2017) ("A temporary denial of medication on one occasion, however, does not amount to deliberate indifference to a serious medical need.")

18

Aipoalani's claims based on his second COVID-19 infection are DISMISSED.  Because Aipoalani has had three opportunities to state a plausible claim based on his second COVID-19 infection and has failed to do so, this dismissal is without leave to amend.  *See Sylvia Landfield Tr.*, 729 F.3d at 1196.

### IV. <u>28 U.S.C. § 1915(g)</u>

Aipoalani is notified that this dismissal may count as a "strike" under 28 U.S.C. § 1915(g).  Under this "3-strikes" provision, a prisoner may not bring a civil action or appeal a civil judgment in forma pauperis,

> if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).

### V. <u>CONCLUSION</u>

(1) The Second Amended Complaint, ECF No. 10, is DISMISSED for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b).

(2) Because Aipoalani has had three opportunities to state a plausible claim for relief and has been unable to do so, the Second Amended Complaint is DISMISSED without leave to amend, and this dismissal may constitute a strike under 28 U.S.C. § 1915(g).

(3) The court CERTIFIES that an appeal from this Order would be frivolous and, therefore, not taken in good faith pursuant to 28 U.S.C. § 1915(a)(3). *See Coppedge v. United States*, 369 U.S. 438, 445 (1962); *Gardner v. Pogue*, 558 F.2d 548, 550 (9th Cir.1977) (stating that indigent appellant is permitted to proceed IFP on appeal only if appeal would not be frivolous).

(4) The Clerk is DIRECTED to enter judgment and close this case.

IT IS SO ORDERED.

DATED: July 21, 2022 at Honolulu, Hawaii.



/s/ Derrick K. Watson
Derrick K. Watson
United States District Judge

---

*Aipoalani v. Derr, et al.*; Civil No. 22-00093 DKW-RT; **ORDER DISMISSING SECOND AMENDED COMPLAINT AND ACTION**